## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, 2100 L Street, NW Washington, DC 20037, | ) ) ) ) ) | Civ. No. 14-11754 |
| CENTER FOR BIOLOGICAL DIVERSITY, 351 California Street, Suite 600 San Francisco, CA 94104, | ) ) ) ) ) | **COMPLAINT FOR DECLARATORY AND OTHER RELIEF** |
| DEFENDERS OF WILDLIFE, 1130 17th Street, NW Washington, DC 20036, | ) ) ) ) | |
| WHALE AND DOLPHIN CONSERVATION, 7 Nelson Street Plymouth, MA 02360, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| NATIONAL MARINE FISHERIES SERVICE 1315 East-West Highway Silver Spring, MD 20910, | ) ) ) ) ) | |
| JOHN BULLARD Regional Administrator Greater Atlantic Regional Fisheries Office NOAA Fisheries 55 Great Republic Drive Gloucester, MA 01930, | ) ) ) ) ) ) ) | |
| EILEEN SOBECK NOAA Assistant Administrator   for Fisheries National Marine Fisheries Service 1315 East-West Highway Silver Spring, MD 20910, | ) ) ) ) ) ) ) ) | |

PENNY PRITZKER,                        )
Secretary of Commerce                  )
U.S. Department of Commerce            )
1401 Constitution Ave., NW             )
Washington, DC 20230,                  )
                                       )
          Defendants.                  )

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

1.      Plaintiffs The Humane Society of the United States, Center for Biological Diversity, Defenders of Wildlife, and Whale and Dolphin Conservation (collectively, "Plaintiffs") challenge the failure of the National Marine Fisheries Service, the Secretary of Commerce, the Assistant Administrator for Fisheries, and the Regional Administrator, Greater Atlantic Regional Fisheries Office (collectively, "NMFS") to revise the critical habitat designation for the North Atlantic right whale – one of the world's most critically endangered large whales. With fewer than 450 North Atlantic right whales left, expanding critical habitat to protect the species' key feeding and breeding areas off the Northeast coast, calving grounds off the Southeast coast, and its mid-Atlantic migration route will help prevent this rare and charismatic whale's extinction and ensure its eventual recovery.

2.      This is not the first time Plaintiffs have been forced to seek relief from this Court to remedy the agency's extensive delay in revising critical habitat. In 2009, Plaintiffs filed a petition to extend the right whale's critical habitat and, in 2010, sued after NMFS failed to provide an initial response within 90 days, as required by the Endangered Species Act ("ESA"). *See Humane Soc'y of the United States, et al. v. NMFS, et al.*, No. 10-10873-PBS (D. Mass. filed May 25, 2010). The case settled after NMFS issued its 90-day and 12-month findings, announcing that critical habitat revision was indeed "warranted" and that the agency would propose revisions "in the second half of 2011." *See* 75 Fed. Reg. 61,690, 61,691 (Oct. 6, 2010).

3.      Over the past decade, NMFS and its own scientists have repeatedly stated that the currently-designated right whale critical habitat is not protective enough and leaves the species vulnerable to injury and death in its most essential habitat areas. The designation of "critical habitat" is one of the fundamental mechanisms by which the ESA aims to conserve and recover imperiled species. *See* 16 U.S.C. § 1533(a)(3).

4.      Yet years later and despite its promises, the agency has failed to propose, much less finalize, North Atlantic right whale critical habitat revisions. NMFS's protracted failure constitutes agency action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act ("APA") and fails to ensure protections required by the ESA. 5 U.S.C. §§ 551-706; 16 U.S.C. §§ 1531-44. Accordingly, Plaintiffs seek an order from the Court establishing prompt deadlines for NMFS's issuance of proposed and final rules to revise the North Atlantic right whale critical habitat designation.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants the district courts original jurisdiction over "all civil actions arising under the . . . laws . . . of the United States."

6.      Venue in this Court is proper under 28 U.S.C. § 1391(e). Plaintiff Whale and Dolphin Conservation resides in Massachusetts and maintains its main U.S. office in Plymouth, the Greater Atlantic Regional Fisheries Office of NMFS is located in Gloucester, and Plaintiffs' petition for critical habitat revision includes large areas off the Massachusetts coast.

## PARTIES

7.      Plaintiff The Humane Society of the United States ("The HSUS") is a non-profit organization headquartered in Washington, D.C. The HSUS is the nation's largest animal

protection organization, with over 11 million members and constituents, approximately 3.4 million of whom reside in states along the Atlantic Coast. The HSUS is committed to the goals of protecting, conserving, and enhancing the nation's wildlife and wildlands, and fostering the humane treatment of all animals. In furtherance of these goals and objectives, The HSUS and its members have demonstrated a strong interest in the conservation and humane treatment of marine mammals, including the North Atlantic right whale. For example, The HSUS has served as a member of the Atlantic Large Whale Take Reduction Team since its inception in 1996, actively participating in efforts to protect the North Atlantic right whale and other large whales from entanglement in fishing gear.

8.      The HSUS brings this action on behalf of itself and its members, who regularly engage in educational, recreational, and scientific activities involving the North Atlantic right whale. Many HSUS members live in close proximity to and frequently visit various portions of the Atlantic coast and regularly view or attempt to view right whales in their natural habitat. HSUS members regularly whale watch both from the shore and from boats, including commercial whale watching vessels. HSUS members plan to continue to observe this species in the future. Further, The HSUS and its members regularly review agency proposals affecting the North Atlantic right whale, review agency data and documentation provided to the public, and participate by commenting and advising the agency on its actions.

9.      Plaintiff Center for Biological Diversity ("the Center") is a non-profit corporation that advocates for the protection of threatened, endangered, and rare species and their habitats throughout the United States and around the world through science, policy, and environmental law. The Center's Oceans Program focuses specifically on conserving U.S. and international marine ecosystems, including seeking protections for imperiled marine mammals, sea turtles,

4

corals, and fish, and ensuring these species' habitats are properly protected from human use and development.

10.     The Center has 675,000 members and supporters nationwide, and over 230,000 of these members and supporters live in the states along the U.S. East Coast. Center members and staff live in and regularly visit areas along the Atlantic Coast where North Atlantic right whales are known to occur in order to enjoy, study, photograph, recreate, observe, and attempt to observe the whales. Those members and staff have concrete plans to continue to live in, travel to, and recreate in areas where they can enjoy right whales and their coastal habitat. Moreover, the Center and its members and staff actively work on behalf of right whale conservation by reviewing scientific data and agency information, petitioning NMFS for increased protections, and monitoring and commenting on activities that have the potential to harm right whales.

11.     Plaintiff Defenders of Wildlife ("Defenders") is a national non-profit organization dedicated to the protection and restoration of all native wild animals and plants in their natural communities. Based in Washington, D.C., and with offices spanning from Florida to Alaska, Defenders has more than 1.1 million members and supporters across the nation, including 415,541 members in states along the Atlantic Coast where right whales live, feed, breed, and migrate.  Defenders is a leader in the conservation community's efforts to protect and recover the critically endangered North Atlantic right whale.

12.     Defenders brings this action on behalf of its members, many of whom enjoy observing, photographing, and appreciating North Atlantic right whales in the wild, and studying the species in its natural habitats, including those designated as critical habitat in 1994 and those petitioned for inclusion as critical habitat in 2009. Defenders' members regularly engage in these activities in various locations along the Atlantic Coast and will continue to do so in the future.

5

The interests of Defenders' members in viewing, studying, and enjoying North Atlantic right whales are harmed by Defendants' failure to protect all habitat areas that are essential to the species' survival and recovery.

13.     Plaintiff Whale and Dolphin Conservation ("WDC") is the world's largest organization dedicated solely to the protection of whales, dolphins, porpoises, and their environment. WDC has offices in the U.K., U.S., Australia, Argentina, and Germany with over 100,000 supporters world-wide, including 5,000 in the United States. WDC and its supporters have worked extensively to preserve the critically imperiled North Atlantic right whale and its habitat.  WDC is incorporated in Massachusetts, with its main office in the United States located in Plymouth.

14.     WDC brings this action on behalf of its members, many of whom enjoy observing, photographing, and appreciating North Atlantic right whales in the wild, and studying the species in its natural habitat. WDC works with commercial whale watching companies through its Whale SENSE program. As a founding partner of Whale SENSE, each year, WDC naturalists and interns educate more than one million passengers on board commercial whale watching vessels throughout the Northeast Region of the United States (Maine to Virginia) regarding the plight of the North Atlantic right whale. WDC members and interns also regularly whale watch from land and water. Additionally, a WDC staff member chairs the Right Whale Consortium's Education Team. Further, WDC members regularly comment on Federal Register notices regarding the protection and conservation of North Atlantic right whales.

15.     Plaintiffs' various members' aesthetic and recreational interests in observing, studying, and appreciating these species are harmed by Defendants' failure to respond to Plaintiffs' petition and revise right whale critical habitat in compliance with the APA and ESA.

Protecting the right whale's habitat is one of the key priorities for recovery of the species. Defendants' violations are threatening the already-fragile existence of critically endangered North Atlantic right whales by undermining and denying much-needed protections for essential right whale habitat. These violations and their contribution to the continued stalled recovery of North Atlantic right whales harm and will continue to harm Plaintiffs' and their members' interests in the conservation of this species. Further, Defendants' failure to timely respond to Plaintiffs' petition and revise right whale critical habitat also harms and will continue to harm Plaintiffs' and their members' procedural interests.

16.    Plaintiffs' and their members' injuries will be redressed by an order of this Court finding NMFS's actions to be unlawfully withheld or unreasonably delayed and compelling NMFS to expeditiously propose and finalize revised North Atlantic right whale critical habitat. Activities that are likely to adversely affect the right whale's habitat are occurring and would be subject to additional scrutiny under the ESA if critical habitat were appropriately designated. In addition, because critical habitat must provide for the recovery of the species, formally recognizing and fully designating all critical habitat would provide an extra measure of protection over that afforded to the species itself.

17.    Defendant National Marine Fisheries Service ("NMFS") is the agency within the U.S. Department of Commerce's National Oceanic and Atmospheric Administration ("NOAA"), and is sometimes called NOAA Fisheries. NMFS is the agency to which the Secretary of Commerce has delegated the authority to conserve most endangered and threatened marine species pursuant to the ESA.

18.    Defendant John Bullard is the Regional Administrator of the Greater Atlantic Regional Fisheries Office at NMFS (formerly known as the Northeast Regional Office) and has

responsibility at the regional level for implementing and fulfilling the agency's duties under the ESA. Mr. Bullard is sued in his official capacity.

19.     Defendant Eileen Sobeck is the Assistant Administrator for NOAA Fisheries at NMFS and has responsibility for implementing and fulfilling the agency's duties under the ESA. Ms. Sobeck is sued in her official capacity.

20.     Defendant Penny Pritzker is the Secretary of Commerce and has ultimate responsibility for the programs of NMFS. Secretary Pritzker is sued in her official capacity.

21.     Collectively, Defendants named in paragraphs 17 through 20 shall be referred to as "Defendants" or "NMFS" in this Complaint.

## STATUTORY BACKGROUND

### Endangered Species Act

22.     Recognizing that certain species "have been so depleted in numbers that they are in danger of or threatened with extinction," Congress enacted the ESA in order "to provide a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(a)(2), (b).

23.     The ESA protects imperiled species by listing them as "endangered" or "threatened." A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

24.     The ESA defines conservation as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the

measures provided pursuant to [the ESA] are no longer necessary." *Id.* § 1532(3). Accordingly, the ultimate goal of the ESA is not only to prevent endangered and threatened species from reaching extinction, but also to recover these species to the point where they no longer require ESA protection.

25.     The legislative history of the ESA reveals that Congress recognized that the protection of habitat is essential to the recovery of listed species, stating that:

> classifying a species as endangered or threatened is only the first step in insuring its survival. Of equal or more importance is the determination of the habitat necessary for that species' continued existence . . . If the protection of endangered and threatened species depends in large measure on the preservation of the species' habitat, then the ultimate effectiveness of the Endangered Species Act will depend on the designation of critical habitat.

H. REP. NO. 94-887 at 3 (1976).

26.     To that end, the ESA requires NMFS to designate areas of critical habitat for each threatened or endangered species. 16 U.S.C. § 1533(a)(3)(A)(i). "Critical habitat" includes areas occupied by the species "on which . . . those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection" are found; and "specific areas outside the geographical area occupied by the species at the time it is listed . . . upon a determination by [NMFS] that such areas are essential for the conservation of the species." *Id.* § 1532(5)(A).

27.     ESA regulations specify that in determining what constitutes critical habitat, NMFS must consider essential physical and biological features that may require special protection which include, but are not limited to: (1) space for growth of both individuals and the population, and space for normal behavior; (2) food, water, air, light, minerals, or other nutritional or physiological requirements; (3) shelter or cover; (4) breeding, reproduction, rearing of offspring, germination, or seed dispersal sites; and (5) habitats protected from disturbance or

representative of the historic geographical and ecological distributions of the species. 50 C.F.R. §
424.12(b). In its critical habitat determination, NMFS must "focus on the principal biological or
physical constituent elements within the defined area that are essential to the conservation of the
species" and must list the known primary constituent elements with the critical habitat
description. *Id.* These elements may include, but are not limited to "roost sites, nesting grounds,
spawning sites, feeding sites, seasonal wetland or dryland, water quality or quantity, host species
or plant pollinator, geological formation, vegetation type, tide, and specific soil types." *Id.*

28.     The ESA provides detailed requirements and timelines for designating and
revising critical habitat. Specifically, NMFS must designate critical habitat "on the basis of the
best scientific data available and after taking into consideration the economic impact . . . and any
other relevant impact, of specifying any particular area as critical habitat." 16 U.S.C. §
1533(b)(2). In general, the ESA requires NMFS to designate critical habitat "concurrently" with
its final decision to list the species, unless NMFS makes specific findings that delay is necessary
and publishes those findings by certain deadlines. *Id*. § 1533(a)(3), (b)(6).

29.     Once designated, any interested person may file a petition with NMFS to revise a
species' critical habitat. *Id*. § 1533(b)(3)(D); 50 C.F.R. § 424.14(c). NMFS must "[t]o the
maximum extent practicable, within 90 days [of] receiving the petition . . . make a finding as to
whether the petition presents substantial scientific information indicating that the revision may
be warranted." 16 U.S.C. § 1533(b)(3)(D)(i); 50 C.F.R. § 424.14(c)(1). "Substantial information"
is "that amount of information that would lead a reasonable person to believe that the measure
proposed in the petition may be warranted." 50 C.F.R. § 424.14(b)(1).

30.     If NMFS makes a positive 90-day finding, it must review the species' status, and
"[w]ithin 12 months after receiving [the] petition . . . determine how  . . . to proceed with the

requested revision" and publish that determination in the Federal Register. 16 U.S.C. § 1533(b)(3)(D)(ii); 50 C.F.R. § 424.14(c)(3).

31.     When revising a critical habitat designation, NMFS must publish a proposed rule providing the regulatory text, a summary of data upon which the proposal is based, and an explanation of how the data supports the proposed rule, as well as an opportunity for public comment and a hearing. 16 U.S.C. § 1533(b)(5); 50 C.F.R. § 424.16. Within one year of the proposed rule to revise critical habitat, NMFS must publish either a final rule, a finding that the revision will not be made, or a notice extending the period by "not more than 6 months" due to disagreement by scientists regarding the sufficiency or accuracy of data supporting the rule. 16 U.S.C. § 1533(b)(6); 50 C.F.R. § 424.17(a)(1). The final rule must include the regulatory text, a summary of comments received, and "a summary . . . of the data on which [the] regulation is based and . . . the relationship of such data to [the] regulation." 16 U.S.C. § 1533(b)(8); 50 C.F.R. § 424.18(a).

32.     Once designated, critical habitat provides important protections for imperiled species beyond those provided by listing alone. The ESA requires each federal agency to insure that its actions will not "result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2). If any federal agency action may adversely affect designated critical habitat, the agency must formally consult regarding the action's effects. 50 C.F.R. § 402.14(a). If the action will result in the destruction or adverse modification of critical habitat, NMFS must set forth reasonable and prudent alternatives to the action. *Id.* § 402.14(h)(3).

33.     In addition to requiring NMFS to designate critical habitat for listed species, the ESA also requires that NMFS "develop and implement . . . 'recovery plans' . . . for the conservation and survival of endangered species and threatened species . . ." 16 U.S.C. §

11

1533(f)(1). Such plans must include, among other items, "a description of. . . site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species" and "objective, measurable criteria which, when met, would result in a determination . . . that the species be removed from the list" of endangered and threatened species. *Id*. § 1533(f)(1)(B).

### Administrative Procedure Act

34.     The APA provides general rules governing the issuance of proposed and final regulations by federal agencies. 5 U.S.C. §§ 551–706. Absent narrow circumstances, a federal agency must publish a notice and allow public comment on any proposed "rule making." *Id.* § 553(b), (c). The APA defines a "rule making" to mean the "process for formulating, amending, or repealing a rule." *Id.* § 551(5).

35.     Regulations promulgated to carry out the ESA must be issued in compliance with APA rulemaking procedures, except as expressly provided for by the ESA. 16 U.S.C. § 1533(b)(4); 5 U.S.C. § 553.

36.     The APA also requires that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b)

37.     Under the APA, a person may seek judicial review to "compel agency action unlawfully withheld or unreasonably delayed . . ." *Id.* § 706(1).

### FACTUAL BACKGROUND

### The North Atlantic Right Whale

38.     With a population of fewer than 450 individuals, the North Atlantic right whale is one of "the world's most critically endangered large whale species and one of the world's most endangered mammals." 73 Fed. Reg. 60,173 (Oct. 10, 2008); *see also* NMFS, *U.S. Atlantic and*

*Gulf of Mexico Marine Mammal Stock Assessments – 2012*, Vol. 1 at 15 (March 2013) ("2012 SAR") ("The North Atlantic right whale is considered one of the most critically endangered populations of large whales in the world.").

39.     Although the right whale has been listed as endangered since 1970, the species has not recovered. *See e.g.*, NMFS, *Recovery Plan for the North Atlantic Right Whale (Eubalaena glacialis)* (Aug. 2004) at III-1 ("North Atlantic right whales face a high risk of extinction into the foreseeable future") ("Recovery Plan"); *see also* 35 Fed. Reg. 18,319, 18,320 (Dec. 2, 1970) (listing the right whale under the predecessor to the ESA). NMFS has identified entanglement in commercial fishing gear and ship strikes as the two primary factors impeding the North Atlantic right whale's recovery. Recovery Plan at v; 2012 SAR at 10. In its recovery plan, NMFS also named "habitat degradation, noise, contaminants, and climate and ecosystem change" as other potential threats to the species, and prioritized the identification and protection of right whale habitat as essential to recovery. Recovery Plan at v.

40.     NMFS has repeatedly stated that the species' survival is dependent on protecting every individual, concluding that the "loss of even a single individual may contribute to the extinction of the species," and that "if current trends continue, the population could go extinct in less than 200 years." 69 Fed. Reg. 30,857, 30,858 (June 1, 2004). As recently as 2008, NMFS stated that "the population can sustain no deaths or serious injuries due to human causes if its recovery is to be assured." 73 Fed. Reg. at 60,176.

41.     North Atlantic right whales rely on specific areas off the East Coast of the United States for their survival. The species' only known calving ground lies in the nearshore waters off the southeastern United States. Right whales migrate from these winter calving grounds through waters off the mid-Atlantic states north to rich feeding and nursery areas off the New England

coast. In all three of these areas, whales are likely to encounter ship traffic, commercial fishing gear, and noise from military exercises and energy development projects, among other hazards.

### The Critical Habitat Designation for the North Atlantic Right Whale

42.     In 1994, NMFS designated critical habitat for the species in the Atlantic Ocean. 59 Fed. Reg. 28,793 (June 3, 1994). NMFS included three areas: (1) the Great South Channel, a bathymetric feature in the southern Gulf of Maine, (2) Cape Cod Bay off of Massachusetts, and (3) an area in the Southeast off the coast of Georgia and northern Florida. *Id.*; 50 C.F.R. § 226.203. NMFS determined that these areas provide critical feeding, nursery, and calving habitat for the North Atlantic right whale. 59 Fed. Reg. at 28,795-96.

43.     Since then, NMFS has repeatedly indicated that these boundaries are insufficient to adequately protect the right whale. For example, in 2002, Ocean Conservancy submitted a petition to revise and expand the North Atlantic right whale's critical habitat. NMFS deemed the petition "not warranted" based on the agency's stated need to identify the "specific nature and location of the physical or biological features of the habitat that are essential to the conservation of the species." 68 Fed. Reg. 51,758 (Aug. 28, 2003). NMFS stated that it intended to "continue with planned research activities" and "evaluate new information to determine" whether critical habitat revision would be appropriate in the future. *Id.* at 51,763.

44.     In 2004, after acknowledging that reducing human-caused death and injury is the highest priority for ensuring survival of the species, the revised recovery plan for right whales deemed habitat "characterization" and "revision, if supported, of critical habitat" a "high priority." Recovery Plan at II. The plan specifically states that NMFS would "propose any revisions to designated critical habitat that might be supported by new information and analysis."

*Id.* at ID; *see also id.* at IV (objective of the recovery plan is to "[i]dentify, characterize, protect and monitor important habitats").

45.     In 2007, NMFS issued a Technical Memorandum defining the areas in the Southeast that constitute the calving grounds for the North Atlantic right whale. *See* Garrison, L.P., *Defining the North Atlantic Right Whale Calving Habitat in the Southeastern United States: An Application of a Habitat Model*, NOAA Technical Memorandum NOAA NMFS-SEFSC-553 (2007). In the memorandum, NMFS scientists concluded that "the currently defined critical habitat should be expanded to include areas further offshore and generally further north off the coast of Georgia," to protect right whale calving grounds. *Id.* at 26; *see also* 72 Fed. Reg. 34,632, 34,636 (June 25, 2007) (NMFS characterizing the area from the southern border of North Carolina through central Florida as a "core portion of the right whale calving area").

46.     In 2008, NMFS scientists published a paper describing "essential" North Atlantic right whale habitat, including foraging grounds in the Northeast. *See* Pace R.M., Merrick R.L., *Northwest Atlantic Ocean Habitats Important to the Conservation of North Atlantic Right Whales (Eubalaena glacialis)*, Northeast Fish Sci Cent Ref Doc. 08-07 (2008). The scientists concluded the essential foraging area "is much more expansive than that within the two current critical habitat areas" already designated in the Northeast. *Id.*

47.     Based on NMFS's own conclusions in the studies above, as well as several other scientific studies, on September 16, 2009, Plaintiffs formally petitioned NMFS to expand the North Atlantic right whale's critical habitat in three areas: (1) the Northeast, to include the entire Gulf of Maine and its associated bays, (2) the Southeast from the northern border of South Carolina through central Florida, and (3) a migratory corridor stretching between the Northeast

and Southeast critical habitat areas. The best scientific data available supports the expansion of right whale critical habitat.

48.     NMFS acknowledged it received the petition on October 1, 2009. However, NMFS failed to timely issue the 90-day finding on the petition as required by the ESA, and Plaintiffs filed litigation to compel action in this Court on May 24, 2010 – four months after NMFS's response was due.

49.     Following initiation of the litigation, NMFS issued a combined 90-day "positive" finding and 12-month "warranted" determination on October 6, 2010. *See* 75 Fed. Reg. at 61,690. The 90-day finding stated that "the petition, in conjunction with the information readily available in our files, presents substantial scientific information indicating that the requested revision may be warranted." *Id.* The 12-month determination stated that NMFS "determined it is timely and appropriate to revise the 1994 designation of critical habitat for northern right whales by continuing our ongoing rulemaking process for designating critical habitat for the North Atlantic right whale." *Id.* at 61,691. The agency stated that it "expect[ed] that a proposed critical habitat rule for the North Atlantic right whale will be submitted to the Federal Register for publication in the second half of 2011." *Id.*

50.     After publication of the 90-day finding and 12-month determination, NMFS scientists reiterated the conclusion of the 2007 Technical Memorandum that critical habitat should be expanded to protect the North Atlantic right whale. *See* Keller, C, L. Garrison, R. Baumstark, L. Ward-Geiger, E. Hines, *Application of a Habitat Model to Define Calving Habitat of the North Atlantic Right Whale in the Southeastern United States*, 18 Endang Species Res 73-87 (2012) ("[b]ased on GAM model results, currently defined critical habitat should be expanded to include areas farther offshore and generally further north off the coast of Georgia.").

51.     To date, NMFS has failed to issue proposed and final rules to revise critical habitat for the North Atlantic right whale.

52.     In the time the critical habitat rule has been languishing, the species has remained vulnerable to injury and death in the areas that NMFS has repeatedly stated are essential to the conservation of the species and warrant protection pursuant to a revised critical habitat designation. Moreover, new activities that may destroy or adversely modify the species' habitat have been proposed in the areas in which Plaintiffs petitioned for critical habitat expansion, including oil and gas exploration, the opening of previously closed areas to commercial fishing, and wind energy development. *See e.g.*, 79 Fed. Reg. 13,074 (Mar. 7, 2014) (geological and geophysical exploration activities on the mid- and South Atlantic Outer Continental Shelf); 78 Fed. Reg. 72,868 (Dec. 4, 2013) (scoping on proposal to open currently prohibited area to black sea bass fishing in the South Atlantic); 78 Fed. Reg. 33,898 (June 5, 2013) (final sale notice for wind energy development project off the coast of Massachusetts and Rhode Island); 77 Fed. Reg. 74,512 (Dec. 14, 2012) (proposal for wind energy development project off the coast of Georgia). If critical habitat were expanded as Plaintiffs requested, NMFS would be required to more closely review the actions and mitigate any destruction of or adverse modification to habitat. NMFS's unreasonable delay in publishing proposed and final rules expanding critical habitat for the North Atlantic right whale is depriving this critically imperiled species of significant legal protections that are essential for its survival and recovery.

## CLAIM FOR RELIEF

## <u>Violations of the ESA and APA</u>

53.     Plaintiffs re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

54.     NMFS's protracted and ongoing failure to take final action on the petition to revise critical habitat for the critically endangered North Atlantic right whale and to propose and finalize such a revision constitutes an agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1). The agency's failure violates the APA and/or the ESA. *Id.*; 16 U.S.C. § 1533(b).

55.     Plaintiffs and their members are harmed and will continue to be harmed by NMFS's violations of law as described herein. This Court has jurisdiction to adjudicate these claims and grant Plaintiffs' requested relief to remedy these harms.

**PRAYER FOR RELIEF**

For the reasons stated above, Plaintiffs respectfully request that the Court:

1.  Declare that NMFS's ongoing failure to take final action on Plaintiffs' petition to revise North Atlantic right whale critical habitat and to propose and finalize such a revision constitutes an agency action unlawfully withheld or unreasonably delayed and violates the APA and/or the ESA;

2.  Order NMFS to publish a proposed rule within ninety (90) days of the date of the Court's order and a final rule within the timeframe provided for by the ESA, 16 U.S.C. § 1533(b)(6);

3.  Award Plaintiffs their costs of litigation, including reasonable attorney fees; and

4.  Provide such other relief as the Court deems just and proper.

Dated: April 10, 2014

Respectfully submitted,


/s/ Kimberly D. Ockene

Kimberly D. Ockene
MA BBO #638097
Senior Attorney
The Humane Society of the United States
131 Windermere Rd.
Auburndale, MA 02466
(617) 467-5842
kockene@humanesociety.org

*Attorney for Plaintiffs*